# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) JENNIFER LYNN CROMBIE, | |
| Plaintiff, | |
| vs. | |
| (1) EQUIFAX INFORMATION SERVICES LLC; | |
| (2) EXPERIAN INFORMATION SOLUTIONS, INC.; | |
| (3) TRANS UNION, LLC; | |
| (4) CAPITAL ONE SERVICES, LLC; | CASE NO.:  CIV-21-98-D |
| (5) JPMORGAN CHASE HOLDINGS, LLC; | **JURY TRIAL DEMANDED** |
| (6) TRUIST BANK; | |
| (7) SYNCHRONY BANK; | |
| (8) TD BANK, N.A.; | |
| (9) CORTRUST BANK, N.A.; | |
| (10) BANK OF AMERICA, N.A.; | |
| (11) HY CITE ENTERPRISES, LLC; | |
| (12) AFFIRM HOLDINGS, INC.; and | |
| (13) LVNV FUNDING, LLC, | |
| Defendants. | |

## COMPLAINT

Jennifer Lynn Crombie ("Plaintiff") brings this Complaint against Equifax

Information Services LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian");

Trans Union, LLC ("Trans Union") (collectively, "the credit bureau defendants"); Capital One Services, LLC ("Capital One"); JPMorgan Chase Holdings, LLC ("JPMorgan Chase"); Truist Bank ("Truist Bank"); Synchrony Bank, N.A. ("Synchrony Bank"); TD Bank, N.A. ("TD Bank"); CorTrust Bank, N.A. ("CorTrust Bank"); Bank of America, N.A. ("Bank of America"); Hy Cite Enterprises, LLC ("Hy Cite Corporation"); Affirm Holdings, Inc. ("Affirm, Inc."); and LVNV Funding, LLC ("LVNV Funding") (collectively, "the furnisher defendants") (all collectively, "Defendants"), for actual, statutory, and punitive damages, costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of the credit bureau defendants' mixing of Plaintiff's credit files with at least one unrelated consumer who has an entirely different last name, address, and Social Security number, and the furnisher defendants' repeated failure to investigate Plaintiff's credit disputes and accurately instruct the credit bureau defendants to modify, delete, or permanently block credit account information that does not belong to Plaintiff.

## PRELIMINARY STATEMENT

1.      The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual citizens. Data technology, whether it be used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individuals to flow immediately to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should benefit from the resulting convenience and efficiency.

2

2.      Unfortunately, however, this information has also become readily available for and subject to mishandling and misuse. Individuals can sustain substantial damage, both emotionally and economically, whenever inaccurate information or fraudulent information is disseminated about them.

3.      The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.      Theses CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, automobile dealers, potential employers, and other similar interested parties) information commonly called "consumer reports," concerning individuals who may be applying for retail credit, to lease an apartment, to obtain a mortgage, auto loan, employment, or the like.

5.      "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

6.      Congress made the following findings when it enacted the FCRA in 1970:

1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

3) Consumer reporting agencies have assumed a vital role in assembling and evaluation consumer credit and other information on consumers.

4) There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4). Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities'". *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

7.  Since 1970, when Congress enacted the FCRA, as amended, 15 U.S.C. § 1681 *et seq.*, federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers.

8.  "Mixed files" create a false description and representation of a consumer's credit history.

4

9.     A "mixed file" occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit files.

10.     The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report." *F.T.C. v. TRW, Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

11.     Mixed files are not a new phenomenon. Equifax, Experian, and Trans Union have been on notice of the existence of mixed files, and the fact that their procedures for creating credit files, including their matching algorithms, are prone to frequently cause mixed files, for over thirty (30) years. *See Thompson v. San Antonia Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

12.     More recently, Equifax, Experian, and Trans Union have been the subject of numerous state attorney general actions relating to their mixed file problems.

13.     For example, in 2015, the New York Attorney General filed charges and settled claims with Equifax, Experian, and Trans Union over mixed files.[1] *See In the Matter of Eric T. Schneiderman, Attorney General of the State of New York v. Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC.*

14.     Notwithstanding Equifax, Experian, and Trans Union's notice and being subject to repeated enforcement actions, mixed files persist despite consumers' unique

---

[1] https://ag.ny.gov/press-release/2015/ag-schneiderman-announces-groundbreaking-consumer-protection-settlement-three Last visited January 24, 2021; *see also* https://ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf Last visited January 24, 2021.

personal identifying information, such as Social Security numbers, dates of birth, and addresses.

15.     Further, mixed files result in the disclosure of a consumer's most personal identifying and financial information absent the consumer's knowledge or consent, or both.

16.     Equifax, Experian, and Trans Union have each been sued thousands of times wherein an allegation was made that Equifax, Experian, and Trans Union violated the FCRA. Moreover, Equifax, Experian, and Trans Union are sued, at a minimum, hundreds of times each year wherein an allegation is made that they mixed a consumers' credit file with that of another person.

17.     Private FCRA lawsuits have resulted in multi-million-dollar verdicts for consumers who fall victim to a mixed credit file.

18.     For example, in 2002, the jury in *Judy Thomas v. Trans Union LLC*, District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas's personal and credit information with another consumer's and failing to unmix them dispute Ms. Thomas' numerous disputes. The jury awarded Ms. Thomas $300,000 in actual damages and $5 million in punitive damages. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

19.     In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC*, Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $219,000 in actual damages and $2.7 million in punitive damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to

unmix them despite Ms. Williams' disputes. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

20.    In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC*, District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $180,000 in actual damages and $18.4 million in punitive damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Millers' numerous disputes. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

21.    Most recently, a jury assessed a $60 million verdict against Trans Union for mixing innocent American citizens with terrorists and drug dealers by matching consumers with the Office of Foreign Asset Control's "terrorist alert" list based on first and last name alone. *See Ramirez v. Trans Union, LLC,* No. 12-CV-00632-JSC, 2017 WL 5153280, at *1 (N.D. Cal. Nov. 7, 2017), *aff'd in part, vacated in part, rev'd in part sub nom. Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th Cir. 2020)

Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

22.    "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA). Moreover, repeated noncompliance with statutory duties can establish that the

defendants acted willfully. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on "reckless disregard for a statutory duty").

23.    No less than three federal Courts of Appeal have held a consumer reporting agency violates 15 U.S.C. § 1681e(b) and may be found to have willfully violated the FCRA when it mixes a consumer's file with another consumer.

24.    Finally, the Federal Trade Commission has specifically warned consumer reporting agencies, including Equifax, Experian, and Trans Union, to review their procedures when a mixed file case occurs.

25.    Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed credit files remain a significant problem for innocent consumers, including Plaintiff.

## THE PARTIES

26.    Plaintiff Jennifer Lynn Crombie ("Plaintiff") is a natural person who resides in the Town of Binger, State of Oklahoma, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

27.    Defendant Equifax Information Services, LLC ("Equifax") is a foreign limited liability company authorized to do business in the State of Oklahoma, including the Western District.

28.    Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

29.     Defendant Experian Information Solutions, Inc. ("Experian") is a foreign limited liability company authorized to do business in the State of Oklahoma, including the Western District.

30.     Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

31.     Defendant Trans Union, LLC ("Trans Union") is a foreign limited liability company authorized to do business in the State of Oklahoma, including the Western District.

32.     Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

33.     Defendant Capital One Services, LLC ("Capital One") is a foreign corporation authorized to do business in the State of Oklahoma, including in the Western District.

34.     Capital One is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

35.     Defendant JPMorgan Chase Holdings, LLC ("JPMorgan Chase") is a foreign multinational investment bank and financial services holding company authorized to do business in the State of Oklahoma, including in the Western District.

36.     JPMorgan Chase is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

37.     Defendant Truist Bank is a super-regional bank holding company authorized to do business in the State of Oklahoma, including in the Western District.

38.     Truist Bank is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

39.     Defendant Synchrony Bank ("Synchrony Bank") is the wholly owned subsidiary of Synchrony Financial, a consumer financial services company headquartered in Stamford, Connecticut. Synchrony Bank is headquartered in Draper, Utah, and is authorized to do business in the State of Oklahoma, including in the Western District.

40.     Synchrony Bank is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

41.     Defendant TD Bank, N.A. ("TD Bank"), is a national bank and subsidiary of the Canadian multinational Toronto-Dominion Bank and is authorized to do business in the State of Oklahoma, including in the Western District.

42.     TD Bank is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

43.     Defendant CorTrust Bank, N.A. ("CorTrust Bank"), is a national bank headquartered in Mitchell, South Dakota and is authorized to do business in the State of Oklahoma, including in the Western District.

44.     CorTrust Bank is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

45.    Defendant Bank of America, N.A. ("Bank of America"), is a multinational investment bank and financial services holding company headquartered in Charlotte, North Carolina and is authorized to do business in the State of Oklahoma, including in the Western District.

46.    Bank of America is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

47.    Defendant Hy Cite Enterprises, LLC ("Hy Cite Corporation"), is limited liability company headquartered in the State of Wisconsin and is authorized to do business in the State of Oklahoma, including in the Western District.

48.    Hy Cite Corporation is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

49.    Defendant Affirm Holdings, Inc. ("Affirm, Inc."), is a publicly traded financial technology company headquartered in San Francisco, California, operating as a financial lender of installment loans for consumers to use at the point of sale to finance a purchase and is authorized to do business in the State of Oklahoma, including in the Western District.

50.    Affirm, Inc. is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

51.    Defendant LVNV Funding, LLC ("LVNV Funding"), is a limited liability company headquartered in Greenville, South Carolina that buys charged-off accounts from companies like credit card issuers and personal loan lenders and is authorized to do business in the State of Oklahoma, including in the Western District.

52.     LVNV Funding is a "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

53.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

54.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

55.     This civil action is properly instituted in the Western District because Caddo County has the greatest nexus with the cause.

56.     The credit bureau defendants knew in this case, and many others, that the subject of their credit reports was an Oklahoma resident applying for multiple credit opportunities with creditors in Oklahoma who would be adversely affected by derogatory credit account information in their credit reports, which does not belong to her.

57.     The furnisher defendants knew in this case, and many others, that the subject of the ACDVs they processed as a result of the multiple indirect disputes Plaintiff initiated with the credit bureau defendants, which the credit bureau defendants forwarded to the furnisher defendants, was an Oklahoma resident who would be adversely affected by credit account information in her credit reports, which does not belong to her.

58.     As such, by investigating and/or reinvestigating disputes that were initiated by an Oklahoma resident, and completing ACDVs as part of those investigations and/or

reinvestigations, containing information belonging to an Oklahoma resident, the credit bureau defendants and furnisher defendants had sufficient contact with the State of Oklahoma such that exercising personal jurisdiction over the credit bureau and furnisher defendants complies with fair play and substantial justice, as required by due process.

## FACTS

### Summary of the Fair Credit Reporting Act

59.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

60.     The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personal, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information…." 15 U.S.C. § 1681(b).

61.     The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

### The Credit Bureaus' Processing of Credit Information

62.     Equifax, Experian, and Trans Union regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

63.     These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

64.     Equifax, Experian, and Trans Union collect information from thousands of furnishers.

65.     The process by which Equifax, Experian, and Trans Union receive, sort, and store information is largely electronic.

66.     Furnishers report credit information to Equifax, Experian, and Trans Union through the use of coded tapes that are transmitted to Equifax, Experian, and Trans Union on a monthly basis through software known as Metro 2.

67.     Equifax, Experian, and Trans Union take the credit information reported by furnishers and create consumer credit files.

68.     Equifax, Experian, and Trans Union maintain credit files on more than 200 million consumers.

69.     Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to within the industry as "tradelines").

**The Credit Bureaus' Mixed File Problem**

70.     Equifax, Experian, and Trans Union know that different consumers can have similar names.

71.     Equifax, Experian, and Trans Union know that different consumers can have similar Social Security numbers.

72.     Equifax, Experian, and Trans Union know that different consumers with similar names can also have similar Social Security numbers.

73.     Equifax, Experian, and Trans Union know that public records often do not contain identifying information such as Social Security numbers or dates of birth.

74.     Equifax, Experian, and Trans Union match tradelines and public records to a consumer credit file by comparing the information about the consumer associated with the tradeline or public record to the information they maintain about the consumer in the consumer's credit file or files.

75.     Equifax, Experian, and Trans Union accomplish this matching of credit information to consumer credit files through the use of certain matching algorithms or database rules.

76.     Sometimes Equifax, Experian, and Trans Union's matching algorithms match information belonging to one consumer to the credit file of another consumer; resulting in what is commonly known in the industry as a mixed or merged credit file.

77.     Mixed files are not a new phenomenon. In fact, as long ago as the early 1990s, the Federal Trade Commission ("FTC") (the government agency charged with enforcement of the FCRA), entered into individual Consent Decrees with each of the major CRAs, Equifax, Experian, and Trans Union, regarding their significant failures and deficiencies with respect to mixed files.

78.     Despite Equifax, Experian, and Trans Union's long-standing and specific knowledge of the mixed file problem, Plaintiff's credit report was still generated by

Equifax, Experian, and Trans Union containing information belonging to another consumer.

79.     A mixed or merged credit file is the result of Equifax, Experian, and Trans Union inaccurately mixing personal identifying information and credit information and/or an entire credit file belonging to one consumer into the credit file of another consumer.

80.     There are many different possible causes for the mixing of credit files but all of them relate in one way or another to the algorithms (the database rules) used by Equifax, Experian, and Trans Union to match personal identifying information and credit information, including public record information, to a particular consumer's credit file.

81.     The success or failure of these algorithms and rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline information to Equifax, Experian, and Trans Union.

82.     A mixed consumer report could be caused by an improper algorithm just as it could be caused by the inaccurate reporting of a consumer's personal "indicative" information (e.g., name, Social Security number, address, date of birth, etc.) by the furnishers to Equifax, Experian, and Trans Union.

83.     These rules also determine which credit files are selected by the algorithm and merged to create a complete consumer report.

84.     Therefore, a mixed consumer report is sometimes the result of the mixing of two or more consumer credit files belonging to different consumers into one consumer report.

## Plaintiff's Mixed Credit Files as of January 2019

85.     In or about January 2019, in advance of attempting to purchase a new vehicle and finance a home, Plaintiff obtained a copy of her Equifax, Experian, and Trans Union credit reports. Upon reviewing the contents of her credit reports, Plaintiff was shocked to discover that they contained unrelated consumer Jennifer Lynn Martinez's personal information, including name, address history, telephone numbers, and employment data; and credit account information, including but not limited to, at least fourteen (14) accounts, six (6) of which were either past due or charged off accounts.

86.     Upon discovering unrelated consumer Jennifer Lynn Martinez's personal and derogatory credit account information mixed into her Equifax, Experian, and Trans Union credit files, Plaintiff was extremely worried how all of this inaccurate information might affect her upcoming credit application for the purchase of a new vehicle.

87.     In or about January 2019, Plaintiff contacted Equifax, Experian, and Trans Union by phone to dispute the inaccurate information in each of her respective credit files. After explaining that an unrelated consumer's personal and credit account information was mixed into her credit files, representatives of Equifax, Experian, and Trans Union instructed Plaintiff to mail in a written dispute identifying the inaccurate information contained with her credit files and attach documentation verifying her personal identification information and address. The credit bureaus' representatives also instructed Plaintiff to contact the creditors listed in her credit reports for the accounts that do not belong to her.

88.     Thereafter, in or about January 2019, Plaintiff emailed and mailed written disputes to Equifax, Experian, and Trans Union outlining the inaccurate information contained within her respective credit files and attached copies of the following documentation to her written disputes: her Social Security card, driver's license, birth certificate, marriage certificate, divorce decree, and utility bills.

### The Credit Bureaus' Method for Considering Consumer Credit Report Disputes

89.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

90.     The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

91.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."  It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

92.     Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately

appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

93.    Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

94.    The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

95.    These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

96.    Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

97.    The data furnishers then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

98.     Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via eOSCAR.

**Plaintiff Disputes with the Collection Agencies Listed on her Credit Reports in January 2019**

99.     In or about January 2019, Plaintiff contacted the collection agencies listed in her Equifax, Experian, and Trans Union credit reports by phone to dispute the multiple derogatory collection accounts that do not belong to her.

100.    Representatives of the collection agencies asked Plaintiff to disclose her personal identification information so that they could attempt to locate her account in their computer systems.

101.    Upon providing her personal identification information to the representatives, including her full name, date of birth, Social Security number, and home address, the representatives informed Plaintiff of the following:

> a) That the actual account holder was named Jennifer Lynn Martinez;
>
> b) That Plaintiff's Social Security number did not match the Social Security number associated with the accounts at issue;
>
> c) That Plaintiff's date of birth was the same as the date of birth listed in their records for the account holder; and,
>
> d) That the original creditors on some of the collection accounts were hospital systems in North Lauderdale, Florida.

102.    Plaintiff has never received any medical treatment at any hospital system in Florida.

103.    Plaintiff, not the least bit surprised that her information did not match what was in the collection agencies' computer systems, asked what she should do next to ensure

that these accounts were no longer associated with her and her credit reports. At least one of the representatives instructed Plaintiff to file a police report and provide a copy of the report to the collection agency.

**Plaintiff Files a Police Report with the Lawton Police Department in January 2019**

104.    Shortly thereafter, on or about January 8, 2019, Plaintiff, confused and worried that she was a victim of identity theft, but following the advice she received from the collection agencies, filed a Police Report online with the Lawton Police Department in Lawton, Oklahoma.

105.    Plaintiff detailed in the Police Report that the personal and credit account information belonging to unrelated consumer Jennifer Lynn Martinez was being mixed and/or combined in her Equifax, Experian, and Trans Union credit reports and that she needed assistance to clear her name and credit history.

106.    After filing the Police Report, Plaintiff received a copy and provided it to one of the collection agencies that had requested a copy from her before it could correct the problem.

**The Credit Bureaus' Responses to Plaintiff's January 2019 Disputes**

107.    In or about February 2019, Equifax, Experian, and Trans Union sent ACDVs to the furnishers of the credit accounts that Plaintiff disputed.

108.    After conducting a reinvestigation of Plaintiff's disputes, some of the furnishers responded to the ACDVs sent by Equifax, Experian, and Trans Union by confirming the disputed accounts did not belong to Plaintiff and, therefore, needed to be deleted from her credit files.

109.   In or about February 2019, Plaintiff received dispute results from Equifax, Experian, and Trans Union.

110.   Equifax, Experian, and Trans Union removed all of the derogatory collection accounts that Plaintiff had disputed, but failed to remove the satisfactory credit accounts, which also did not belong to Plaintiff, from Plaintiff's credit files.

111.   Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681i(a)(1)(A) by failing to delete all of the inaccurate information in Plaintiff's credit files after they received notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to the respective furnishers; by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit files; and by relying upon verification from sources they had reason to know are unreliable.

112.   Thereafter, Equifax, Experian, and Trans Union continued to report personal and credit account information belonging to unrelated consumer Jennifer Lynn Martinez in Plaintiff's credit files.

**Equifax's Mixed Credit File Negatively Impacts Plaintiff's Credit Application with KIA Motor Finance in April 2019**

113.   In or about April 2019, Plaintiff went to Lawton Kia in Lawton, Oklahoma, to purchase a new vehicle.

114.   Upon submitting a credit application with Lawton Kia to obtain the best financing rate for her vehicle purchase, Lawton Kia shopped Plaintiff's credit around with multiple lenders.

115.    KIA Motor Finance ultimately offered Plaintiff the most competitive financing rate of the various lenders who accessed Plaintiff's credit reports.

116.    KIA Motor Finance relied on the contents of Plaintiff's Equifax credit file at the time it determined the financing rate it could offer Plaintiff. As of April 1, 2019, the date KIA Motor Finance accessed Plaintiff's Equifax credit file, it was still mixed with unrelated consumer Jennifer Lynn Martinez's personal and credit account information.

117.    Prior to providing Plaintiff's credit file to KIA Motor Finance on April 1, 2019, Equifax reinserted one or more of the previously deleted derogatory collection accounts, belonging to unrelated consumer Jennifer Lynn Martinez, into Plaintiff's credit file and failed to notify Plaintiff of the reinsertion in writing no later than five (5) business days after the reinsertion, in violation of 15 U.S.C. § 1681i(a)(5)(B)(ii).

118.    Equifax's inaccurate credit reporting adversely impacted Plaintiff's credit score and the financing rate that she qualified for with KIA Motor Finance.

**Trans Union's Mixed Credit File Negatively Impacts Plaintiff's Credit Application with Aqua Finance in May 2019**

119.    In or about April 2019, Plaintiff went to Camperland of Oklahoma ("Camperland"), an RV and Motor Home dealer in Tulsa, Oklahoma, to purchase a used Motor Home.

120.    Plaintiff found a 1994 Damon Challenger Motor Home that she really liked and submitted a credit application to obtain the best financing rate for her Motor Home purchase.

121.   Camperland shopped Plaintiff's credit around with a couple of different lenders and Aqua Finance ultimately offered Plaintiff the most competitive financing rate of the lenders who accessed Plaintiff's credit reports.

122.   Aqua Finance relied on the contents of Plaintiff's Trans Union credit file at the time it determined the financing rate it could offer Plaintiff. As of May 1, 2019, the date Aqua Finance accessed Plaintiff's Trans Union credit file, it was still mixed with unrelated consumer Jennifer Lynn Martinez's personal and credit account information.

123.   Prior to providing Plaintiff's credit file to Aqua Finance on May 1, 2019, Trans Union reinserted one or more of the previously deleted derogatory collection accounts, belonging to unrelated consumer Jennifer Lynn Martinez, into Plaintiff's credit file and failed to notify Plaintiff of the reinsertion in writing no later than five (5) business days after the reinsertion, in violation of 15 U.S.C. § 1681i(a)(5)(B)(ii).

124.   Trans Union's inaccurate credit reporting adversely impacted Plaintiff's credit score and the financing rate that she qualified for with Aqua Finance.

125.   Plaintiff ultimately decided to go through with the Motor Home purchase but had to pay over 20% interest to finance it with Aqua Finance.

**Connexus Credit Union Denies Plaintiff's Credit Application in June 2019**

126.   In or about June 2019, Plaintiff's home was in need of some significant repairs, so she applied for a personal loan with Connexus Credit Union.

127.   Upon submitting a credit application with Connexus Credit Union to obtain the best financing rate for a personal loan, Plaintiff specified that she was seeking a personal loan in the amount of $10,000.

128.    Connexus Credit Union denied Plaintiff's credit application.

129.    Connexus Credit Union relied on the contents of Plaintiff's Trans Union credit file at the time it denied her credit application. As of June 14, 2019, the date Connexus Credit Union accessed Plaintiff's Trans Union credit file, it was still mixed with unrelated consumer Jennifer Lynn Martinez's personal and credit account information.

130.    Trans Union's inaccurate credit reporting adversely impacted Plaintiff's credit score and caused Connexus Credit Union to deny Plaintiff's credit application.

**Plaintiff's Mixed Credit Files as of December 2019**

131.    As of December 18, 2019, Plaintiff's Experian credit report contained the following eight (8) adverse accounts, which belong to unrelated consumer Jennifer Lynn Martinez:

   a)  AFFIRM INC, Account #E5BLXXXX
       Date Opened: 02/20/2019
       Status: Collection account. $120 past due as of Nov 2019.

   b)  AFFIRM INC, Account #X38ZXXXX
       Date Opened: 01/04/2019
       Status: Collection account. $1,074 past due as of Nov 2019.

   c)  AFFIRM INC, Account #X8Q6XXXX
       Date Opened: 02/25/2019
       Status: Collection account. $561 past due as of Nov 2019.

   d)  CAP1/WMT, Account #603220XXXXXXXXXX
       Date Opened: 01/03/2019
       Status: Open. $163 past due as of Dec 2019.

   e)  CORTRUST BANK NA, Account #543668XXXXXXXXXX
       Date Opened: 03/27/2019

Status: Account charged off. $887 written off. $887 past due as of Dec 2019.

    f)   JPMCB CARD, Account #426684XXXXXXXXXX
         Date Opened: 01/02/2019
         Status: Closed. $622 past due as of Nov 2019.

    g)   SUNTRUST, Account #LS5754XXXX
         Date Opened: 03/05/2019
         Status: Account charged off. $5,187 written off. $5,187 past due as of Oct 2019.

    h)   TD BANK USA/TARGET CREDIT, Account #585975XXXXXXXXXX
         Date Opened: 02/25/2019
         Pay Status: Closed. $325 past due as of Nov 2019.

132.    All eight (8) of these adverse accounts, totaling approximately $14,721.00 in unpaid and charged off debts, belong to unrelated consumer Jennifer Lynn Martinez.

133.    As of December 18, 2019, Plaintiff's Experian credit report contained the following eight (8) satisfactory accounts, which belong to unrelated consumer Jennifer Lynn Martinez:

    a)   BANK OF AMERICA, Account #440066XXXXXXXXXX
         Date Opened: 08/09/2018
         Status: Paid, Closed/Never late.

    b)   BANK OF AMERICA, Account #488894XXXXXXXXXX
         Date Opened: 05/16/2008
         Status: Closed/Never late.

    c)   CAPITAL ONE, Account #517805XXXXXXXXXX
         Date Opened: 12/19/2018
         Status: Open/Never late.

    d)   CAPITAL ONE, Account #517805XXXXXXXXXX
         Date Opened: 08/19/2008

Status: Open/Never late.

   e)  CITICARDS CBNA, Account #542418XXXXXXXXXX
       Date Opened: 12/21/2018
       Status: Open/Never late.

   f)  HY CITE CORP/ROYAL PRESTIGE, Account #2169XXXX
       Date Opened: 08/19/2008
       Status: Open/Never late.

   g)  SYNCB/TJX COS DC, Account #524366XXXXXXXXXX
       Date Opened: 12/21/2014
       Status: Open/Never late.

   h)  SYNCB/WALMART, Account #603220XXXXXXXXXX
       Date Opened: 01/03/2019
       Status: Closed/Never late.

134.   All eight (8) of these satisfactory accounts, totaling approximately $8,854.00 in high credit, belong to unrelated consumer Jennifer Lynn Martinez.

135.   As of December 18, 2019, Plaintiff's Experian credit report contained the following twenty-two (22) hard inquiries with the following creditors, none of whom Plaintiff ever applied for credit with:

   a)  KLARNA/WEBBANK         Date: 12/04/2019
   b)  CREDCO/FIRST AMERICAN   Date: 06/25/2019
   c)  MERRICK BANK           Date: 05/01/2019
   d)  THE HOME DEPOT/CITIBANK  Date:04/05/2019;
       04/06/2019
   e)  BLUESTEM/WEBBANK/FINGERHUT  Date:03/02/2019;
       01/11/2019
   f)  SUNTRST DBA LGHTSTRM    Date: 03/01/2019
   g)  CREDIT ONE BANK        Date:02/16/2019;
       01/11/2019
   h)  DISCOVER FINANCIAL SERVI  Date: 01/27/2019

    i)  AMERICAN EXPRESS          Date: 01/18/2019

    j)  CAP ONE NA               Date:01/15/2019;

        01/03/2019; 12/19/2018

    k)  SPRINT                  Date: 01/11/2019

    l)  CLARITY SERVICES INC      Date: 01/09/2019

    m) ONEMAIN               Date: 01/03/2019

    n)  JPMCB CARD            Date: 01/02/2019

    o)  WF CRD SVC             Date: 01/02/2019

    p)  CITI CARDS/CITIBANK      Date: 12/21/2018

    q)  BK OF AMER            Date: 08/09/2018

136.    Plaintiff never applied for credit with any of the aforementioned creditors.

137.    All twenty-two (22) of the aforementioned hard inquiries were initiated by credit applications submitted by unrelated consumer Jennifer Lynn Martinez.

138.    As Plaintiff had not authorized any of the aforementioned creditors to request her credit reports from Experian on the aforementioned dates in 2018 and 2019, nor did Plaintiff enter into any business transaction with the aforementioned creditors that would have theoretically provided a permissible purpose for them to obtain Plaintiff's Experian credit report, Experian's disclosure of Plaintiff's credit file to the aforementioned creditors on all of the aforementioned dates was done without a permissible purpose, in violation of 15 U.S.C. § 1681b(c)(1).

139.    As of December 27, 2019, Plaintiff's Equifax credit report contained the following six (6) adverse accounts, which belong to unrelated consumer Jennifer Lynn Martinez:

    a)  CAPITAL ONE/WALMART, Account #603220379435****
        Date Opened: 01/03/2019
        Pay Status: Account 90 Days Past Due Date

b) CORTRUST BANK, Account #543668400038****
Date Opened: 03/27/2019
Pay Status: Charged Off

c) JPMCB CARD SERVICES, Account #426684159585****
Date Opened: 01/02/2019
Pay Status: Account 120 Days Past Due Date

d) SUNTRUST BANK DBA LIGHTSTREAM, Account #LS5754****
Date Opened: 03/05/2019
Pay Status: Charged Off

e) SYNCB/WAL-MART, Account #603220379435****
Date Opened: 01/03/2019
Pay Status: Account 30 Days Past Due Date

f) TD BANK USA/TARGET CREDI, Account #585975213988****
Date Opened: 02/25/2019
Pay Status: Charged Off

140.　All six (6) of these adverse accounts, totaling approximately $14,146.00 in unpaid and charged off debts, belong to unrelated consumer Jennifer Lynn Martinez.

141.　As of December 27, 2019, Plaintiff's Equifax credit report contained the following eight (8) satisfactory accounts, which belong to unrelated consumer Jennifer Lynn Martinez:

a) BANK OF AMERICA, Account #488894011834****
Date Opened: 05/16/2008
Pay Status: Current; Paid or Paying as Agreed

b) BANK OF AMERICA, Account #440066195576****
Date Opened: 08/09/2018
Pay Status: Current; Paid or Paying as Agreed

c)  CAPITAL ONE BANK USA NA, Account #517805901928*
    Date Opened: 08/19/2008
    Status: Pays as Agreed

d)  CITI/CBNA, Account #603525306211*
    Date Opened: 08/03/2008
    Status: Pays as Agreed

e)  CITICARDS CBNA, Account #542418128379*
    Date Opened: 12/21/2018
    Status: Pays as Agreed

f)  HY CITE CORPORATION, Account #2169*
    Date Opened: 08/01/2008
    Status: Pays as Agreed

g)  SYNCB/JC PENNEYS, Account #600889088768*
    Date Opened: 09/17/1996
    Status: Pays as Agreed

h)  SYNCB/TJX CO DC, Account #524366104342*
    Date Opened: 12/21/2014
    Status: Pays as Agreed

142.    All eight (8) of these satisfactory accounts, totaling approximately $8,398.00 in high credit, belong to unrelated consumer Jennifer Lynn Martinez.

143.    As of December 27, 2019, Plaintiff's Equifax credit report contained the following fourteen (14) hard/regular inquiries with the following creditors, none of whom Plaintiff ever applied for credit with:

| | | |
|---|---|---|
| a) | FIRST PREMIER BANK | Date: 06/24/2019 |
| b) | SYNCB/PAYPAL | Date: 06/17/2019 |
| c) | SUNTRUST BANK DBA LIGHTSTREAM | Date: 03/01/2019; |
| | 04/25/2019 | |
| d) | COMENITYBANK/WAYFAIRCARD | Date: 02/24/2019 |

e) TD BANK USA/TARGET CREDIT      Date: 02/23/2019
f) COMENITYCAPITAL/ULTAMC      Date: 02/23/2019
g) DISCOVER BANK      Date: 01/27/2019
h) CAPITAL ONE BANK USA NA      Date: 01/15/2019;
   01/03/2019; 12/19/2018
i) HUGHES NETWORK SYSTEMS      Date: 01/03/2019
j) WF CRD SVC      Date: 01/02/2019
k) CBNA      Date: 12/21/2018

144.    Plaintiff never applied for credit with any of the aforementioned creditors.

145.    All fourteen (14) of the aforementioned hard/regular inquiries were initiated by credit applications submitted by unrelated consumer Jennifer Lynn Martinez.

146.    As Plaintiff had not authorized any of the aforementioned creditors to request her credit reports from Equifax on the aforementioned dates in 2018 and 2019, nor did Plaintiff enter into any business transaction with the aforementioned creditors that would have theoretically provided a permissible purpose for them to obtain Plaintiff's Equifax credit report, Equifax's disclosure of Plaintiff's credit file to the aforementioned creditors on all of the aforementioned dates was done without a permissible purpose, in violation of 15 U.S.C. § 1681b(c)(1).

147.    As of December 29, 2019, Plaintiff's Trans Union credit report contained the following six (6) adverse accounts, which belong to unrelated consumer Jennifer Lynn Martinez:

a) CAPITAL ONE/WALMART, Account #603220379435****
Date Opened: 01/03/2019
Pay Status: Account 90 Days Past Due Date

b) CORTRUST BANK, Account #543668400038****
Date Opened: 03/27/2019

Pay Status: Charged Off

    c)  JPMCB CARD SERVICES, Account #426684159585****
        Date Opened: 01/02/2019
        Pay Status: Account 120 Days Past Due Date

    d)  SUNTRUST BANK DBA LIGHTSTREAM, Account #LS5754****
        Date Opened: 03/05/2019
        Pay Status: Charged Off

    e)  SYNCB/WAL-MART, Account #603220379435****
        Date Opened: 01/03/2019
        Pay Status: Account 30 Days Past Due Date

    f)  TD BANK USA/TARGET CREDI, Account #585975213988****
        Date Opened: 02/25/2019
        Pay Status: Charged Off

148.    All six (6) of these adverse accounts, totaling approximately $14,146.00 in unpaid and charged off debts, belong to unrelated consumer Jennifer Lynn Martinez.

149.    As of December 29, 2019, Plaintiff's Trans Union credit report contained the following three (3) satisfactory accounts, which belong to unrelated consumer Jennifer Lynn Martinez:

    a)  BANK OF AMERICA, Account #488894011834****
        Date Opened: 05/16/2008
        Pay Status: Current; Paid or Paying as Agreed

    b)  BANK OF AMERICA, Account #440066195576****
        Date Opened: 08/09/2018
        Pay Status: Current; Paid or Paying as Agreed

    c)  CAPITAL ONE BANK USA NA, Account #517805973696****
        Date Opened: 12/19/2018
        Pay Status: Current; Paid or Paying as Agreed

150.    All three (3) of these satisfactory accounts, totaling approximately $3,664.00 in debt, belong to unrelated consumer Jennifer Lynn Martinez.

151.    As of December 29, 2019, Plaintiff's Trans Union credit report contained the following seventeen (17) hard/regular inquiries with the following creditors, none of whom Plaintiff ever applied for credit with:

a)  BOMTCI 1STACCESS:               Date: 09/18/2019
b)  CB INDIGO:                       Date: 07/22/2019
c)  SYNCBLOWES PLCC:               Date: 04/04/2019
d)  COMMERCE BANK:                  Date: 04/01/2019
e)  CORTRUST BANK:                  Date: 03/25/2019
f)   BARCLAYS BANK DELEWARE:       Date: 03/01/2019
g)  BOMTCI-TOTAL VISA               Date: 01/27/2019
h)  SYNCBAMAZON                     Date: 01/25/2019
i)   GINNY'S INC                    Date: 01/23/2019
j)   CAPITAL ONE BANK USA NA        Date: 12/19/2018; 01/03/2019;
     01/15/2019
k)  ELOANBPPR                       Date: 01/04/2019
l)   SYNCB:                          Date: 01/03/2019
m) SYNCBWALMART PLCC               Date: 01/02/2019
n)  JPMCB CARD SERVICES            Date: 01/02/2019
o)  BANK OF AMERICA                 Date: 08/09/2018

152.    Plaintiff never applied for credit with any of the aforementioned creditors.

153.    All seventeen (17) of the aforementioned hard/regular inquiries were initiated by credit applications submitted by unrelated consumer Jennifer Lynn Martinez.

154.    As Plaintiff had not authorized any of the aforementioned creditors to request her credit reports from Trans Union on the aforementioned dates in 2018 and 2019, nor did Plaintiff enter into any business transaction with the aforementioned creditors that would

have theoretically provided a permissible purpose for them to obtain Plaintiff's Trans Union credit report, Trans Union's disclosure of Plaintiff's credit file to the aforementioned creditors on all of the aforementioned dates was done without a permissible purpose, in violation of 15 U.S.C. § 1681b(c)(1).

155.   Equifax, Experian, and Trans Union mixed unrelated consumer Jennifer Lynn Martinez's personal and account information into Plaintiff's credit reports despite the fact that numerous discrepancies exist between their personal identification information. The discrepancies that should have caused Equifax, Experian, and Trans Union to realize Plaintiff is not the same person as Jennifer Lynn Martinez include the following:

a) Plaintiff's legal name is Jennifer Lynn **Crombie** and the personal and account information Equifax, Experian, and Trans Union mixed into Plaintiff's credit reports belongs to unrelated consumer Jennifer Lynn **Martinez**;

b) Plaintiff resides in **Binger, Oklahoma**, and unrelated consumer Jennifer Lynn Martinez was last known to reside in **North Lauderdale, Florida** (and Plaintiff has never lived in Florida); and

c) **Plaintiff's Social Security number is entirely different than unrelated consumer Jennifer Lynn Martinez's Social Security number.**

156.   Equifax, Experian, and Trans Union maintain/maintained multiple credit files for Plaintiff.

157.   At least one of Plaintiff's Equifax, Experian, and Trans Union credit files contain or have contained personal information and credit account information, including derogatory collection accounts and charge offs, which do not belong or pertain to her.

158.   Equifax, Experian, and Trans Union's merging and matching algorithms have caused Plaintiff's credit files to become mixed with personal and credit account information belonging to at least one unrelated consumer, Jennifer Lynn Martinez.

159.   Within the two (2) years previous to the filing of this Complaint, Equifax, Experian, and Trans Union prepared and distributed one or more consumer reports, as that term is defined by 15 U.S.C. § 1681a(d), pertaining to Plaintiff that contained misleading and inaccurate information which belongs to at least one other consumer, including without limitation, personal information and credit accounts, which actually belong to unrelated consumer Jennifer Lynn Martinez.

160.   Equifax, Experian, and Trans Union failed to maintain and follow reasonable procedures to assure the maximum possible accuracy of the personal and credit account information contained within at least one of the credit files they maintain for Plaintiff.

161.   Equifax, Experian, and Trans Union know that their matching algorithms are flawed and frequently result in mixed information and credit files belonging to two different consumers.

162.   Equifax, Experian, and Trans Union have been sued thousands of times by consumers and suffered judgments as a result of mixing consumer credit information and credit files.

163.    When Equifax, Experian, and Trans Union assemble consumer reports for their subscribers, they allow such subscribers to use only a partial list of personal identifiers to match data to the target consumer resulting in the inclusion of a broad range of credit information; information which may in some cases, like the instant matter, belong to another consumer.

164.    Equifax, Experian, and Trans Union also fail to require an exact match of all digits of a consumer's Social Security number, which may in some cases result in the inclusion of credit information which belongs to another consumer.

165.    However, when consumers like Plaintiff request copies of their credit files, Equifax, Experian, and Trans Union require a complete match of all personal identifiers, resulting in a narrower match of data for the consumer.

166.    Consequently, Equifax, Experian, and Trans Union's own procedures for disclosing information to consumers, as they are required to do by the FCRA, tend to mask or conceal the problem of mixed files.

167.    By concealing this information, Equifax, Experian, and Trans Union impair the ability of consumers, like Plaintiff, to identify and dispute errors resulting from mixed credit information or credit files.

168.    Equifax, Experian, and Trans Union have failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit files and of her consumer reports, in violation of 15 U.S.C. § 1681e(b).

169.    Equifax, Experian, and Trans Union's failures to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit files and of her consumer reports was negligent and/or willful.

### Plaintiff's February 2020 Disputes with the Credit Bureaus

170.    On February 14, 2020, Plaintiff mailed written disputes to Equifax, Experian, and Trans Union, via certified mail, disputing all of the aforementioned personal and credit account information contained in her credit reports that does not belong to her, including names reported, addresses reported, telephone numbers reported, and employment data reported; and all of the aforementioned adverse and satisfactory accounts that do not belong to her. Plaintiff requested that Equifax, Experian, and Trans Union reinvestigate the disputed information, correct the reporting, and send her corrected copies of her credit reports.

171.    Plaintiff's February 2020 disputes specifically included her full name, date of birth, Social Security number, and current address so that the credit bureaus would be able to properly identify her and locate her credit files.

172.    Plaintiff also attached the following documents to her February 2020 disputes: a copy of her Equifax, Experian, and Trans Union December 2019 credit reports (with all of the inaccurate information she was disputing highlighted in bright yellow), Social Security card, and driver's license.

### The Credit Bureaus' Responses to Plaintiff's February 2020 Disputes

173.    Upon receiving Plaintiff's written dispute in February 2020, Equifax sent ACDVs to the following furnishers regarding the credit accounts Plaintiff disputed:

a)  BANK OF AMERICA, Account #488894011834*

b)  BANK OF AMERICA, Account #440066195576*

c)  CAPITAL ONE BANK USA NA, Account #517805901928*

d)  CAPITAL ONE/WALMART, Account #603220379435*

e)  CITI/CBNA, Account #603525306211*

f)  CITICARDS CBNA, Account #542418128379*

g)  CORTRUST BANK CREDIT CARD, Account #543668400038*

h)  HY CITE CORPORATION, Account #2169*

i)  JPMCB CARD SERVICES, Account #426684159585*

j)  SUNTRUST BANK DBA LIGHTSTREAM, Account #LS5754*

k)  SYNCB/JC PENNEYS, Account #600889088768*

l)  SYNCB/TJX CO DC, Account #524366104342*

m) SYNCB/WALMART, Account #603220379435*

n)  TD BANK USA/TARGET CREDIT, Account #585975213988*

174.   Bank of America instructed Equifax to delete Account #488894011834* from Plaintiff's credit file.

175.   Bank of America instructed Equifax to delete Account #440066195576* from Plaintiff's credit file.

176.   Capital One instructed Equifax to delete Account #517805901928* from Plaintiff's credit file.

177.    Capital One verified for Equifax that Account #603220379435* belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

178.    Citibank instructed Equifax to delete Account #603525306211* from Plaintiff's credit file.

179.    Citibank instructed Equifax to delete Account #542418128379* from Plaintiff's credit file.

180.    Cortrust Bank instructed Equifax to delete Account #543668400038* from Plaintiff's credit file.

181.    Hy Cite Corporation instructed Equifax to delete Account #2169* from Plaintiff's credit file.

182.    JPMorgan Chase Bank verified for Equifax that Account #426684159585* belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

183.    Truist Bank verified for Equifax that Account #LS5754* belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

184.    Synchrony Bank instructed Equifax to delete Account #600889088768* from Plaintiff's credit file.

185.    Synchrony Bank instructed Equifax to delete Account #524366104342* from Plaintiff's credit file.

186.    Synchrony Bank verified for Equifax that Account #603220379435* belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

187.    TD Bank verified for Equifax that Account #585975213988* belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

188.    On March 14, 2020, Equifax completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Equifax failed to remove five (5) of the fourteen (14) disputed credit accounts, which do not belong to Plaintiff, and which continued to appear on Plaintiff's Equifax credit report thereafter.

189.    Equifax failed to conduct a reinvestigation of the fourteen (14) hard inquiries disputed by Plaintiff, in violation of 15 U.S.C. § 1681i(a)(1)(A).

190.    Upon receiving Plaintiff's written dispute in February 2020, Trans Union sent ACDVs to the following furnishers regarding the credit accounts Plaintiff disputed:

a)  BANK OF AMERICA, Account #488894011834****

b)  CAPITAL ONE BANK USA NA, Account #517805973696****

c)  BANK OF AMERICA, Account #440066195576****

d)  CAPITAL ONE/WALMART, Account #603220379435****

e)  CORTRUST BANK, Account #543668400038****

f)  JPMCB CARD SERVICES, Account #426684159585****

g)  SYNCB/WAL-MART, Account #603220379435****

h)  TD BANK USA/TARGET CREDI, Account #585975213988****

i)  SUNTRUST BANK DBA LIGHTSTREAM, Account #LS5754****

191.    Bank of America instructed Trans Union to delete Account #488894011834**** from Plaintiff's credit file.

192.   Capital One instructed Trans Union to delete Account #517805973696****
from Plaintiff's credit file.

193.   Bank   of   America   verified   for   Trans   Union   that   Account
#440066195576**** belongs to Plaintiff and is accurately reporting on Plaintiff's credit
report.

194.   Capital One verified for Trans Union that Account #603220379435****
belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

195.   Cortrust Bank verified for Trans Union that Account #543668400038****
belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

196.   JPMorgan   Chase   Bank   verified   for   Trans   Union   that   Account
#426684159585**** belongs to Plaintiff and is accurately reporting on Plaintiff's credit
report.

197.   Synchrony Bank verified for Trans Union that Account #603220379435****
belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

198.   TD   Bank   verified   for   Trans   Union   that   Account   #585975213988****
belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

199.   Truist Bank verified for Trans Union that Account #LS5754**** belongs to
Plaintiff and is accurately reporting on Plaintiff's credit report.

200.   On March 15, 2020, Trans Union completed its reinvestigation of Plaintiff's
dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff.
Trans Union failed to remove seven (7) of the nine (9) disputed credit accounts, which do

not belong to Plaintiff, and which continued to appear on Plaintiff's Trans Union credit report thereafter.

201.   Upon receiving Plaintiff's written dispute in February 2020, Experian sent ACDVs to the following furnishers regarding the credit accounts Plaintiff disputed:

a)  AFFIRM INC, Account #E5BLXXXX

b)  AFFIRM INC, Account #X38ZXXXX

c)  AFFIRM INC, Account #X8Q6XXXX

d)  BANK OF AMERICA, Account #440066XXXXXXXXXX

e)  BANK OF AMERICA, Account #488894XXXXXXXXXX

f)  CORTRUST BANK NA, Account #543668XXXXXXXXXX

g)  CITICARDS CBNA, Account #542418XXXXXXXXXX

h)  CAPITAL ONE, Account #517805XXXXXXXXXX

i)  SYNCB/WALMART, Account #603220XXXXXXXXXX

j)  SYNCB/TJX COS DC, Account #524366XXXXXXXXXX

k)  HY CITE CORP/ROYAL PRESTIGE, Account #2169XXXX

l)  TD BANK USA/TARGET CREDIT, Account #585975XXXXXXXXXX

m) SUNTRUST, Account #LS5754XXXX

n)  CAP1/WMT, Account #603220XXXXXXXXXX

o)  JPMCB CARD, Account #426684XXXXXXXXXX

202.    Affirm, Inc. verified for Experian that Account #s E5BLXXXX, X38ZXXXX, and X8Q6XXXX belong to Plaintiff and are accurately reporting on Plaintiff's credit report.

203.    Bank of America verified for Experian that Account #440066195576XXXX belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

204.    Bank of America instructed Experian to delete Account #488894011834XXXX from Plaintiff's credit file.

205.    Cortrust Bank verified for Experian that Account #543668400038XXXX belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

206.    Citibank North America verified for Experian that Account #542418128379XXXX belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

207.    Capital One Bank instructed Experian to delete Account #517805973696 from Plaintiff's credit file.

208.    Synchrony Bank verified for Experian that Account #603220379435XXXX belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

209.    Synchrony Bank instructed Experian to delete Account #524366104342XXXX from Plaintiff's credit file.

210.    Hy Cite Corporation verified for Experian that Account #2169XXXX belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

211.    TD Bank verified for Experian that Account #585975213988**** belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

212.    Truist Bank verified for Experian that Account #LS5754**** belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

213.    Capital One Bank verified for Experian that Account #603220379435XXXX belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

214.    JPMorgan Chase Bank verified for Experian that Account #426684159585**** belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

215.    On March 17, 2020, Experian completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Experian failed to remove twelve (12) of the fifteen (15) disputed credit accounts, which do not belong to Plaintiff, and which continued to appear on Plaintiff's Experian credit report thereafter.

216.    As a standard practice, Equifax, Experian, and Trans Union do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified

it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

217.    Consistent with their standard policies and procedures, Equifax, Experian, and Trans Union automatically generated their "investigation" results once the aforementioned furnishers provided their responses to Plaintiff's disputes, verifying certain disputed credit accounts as accurate and belonging to Plaintiff, and no employee from any of the credit bureaus took any additional steps to review Plaintiff's documentation after the furnishers provided their responses to Plaintiff's disputes.

218.    Instead, Equifax, Experian, and Trans Union blindly accepted the aforementioned furnishers' incomplete version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit reports.

219.    Equifax, Experian, and Trans Union continue the practice of parroting the response from furnishers even though they have been repeatedly sued for failing to conduct reasonable investigations as required by the FCRA.

220.    Equifax, Experian, and Trans Union do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

221.    Instead, Equifax, Experian, and Trans Union intentionally choose not to comply with the FCRA to lower their costs. Accordingly, Equifax, Experian, and Trans Union's violations of the FCRA are willful.

222.    The aforementioned data furnishers, Bank of America, Capital One, CorTrust Bank, Hy Cite Corporation, JP Morgan Chase, Truist Bank, Synchrony Bank, TD

Bank, and Affirm Holdings, Inc., all violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to them, and failing to communicate to the respective credit bureaus, via ACDV, to modify, delete, or permanently block the reporting of the disputed credit accounts that do not belong to Plaintiff.

### Plaintiff's October 2020 Disputes with the Credit Bureaus

223.   On October 27, 2020, Plaintiff mailed a third round of written dispute letters to Equifax, Experian, and Trans Union, via certified mail, disputing all of the aforementioned personal and credit account information that the credit bureaus had previously failed to remove from her credit files, including names reported and addresses reported; and all of the aforementioned adverse and satisfactory accounts and hard inquiries that do not belong to her. Plaintiff requested that Equifax, Experian, and Trans Union once again reinvestigate the disputed information, correct the reporting, and send her corrected copies of her credit reports.

224.   Plaintiff's October 2020 disputes specifically included her full name, date of birth, Social Security number, and current address so that the credit bureaus would be able to properly identify her and locate her credit files.

225.   Plaintiff also attached the following documents to her October 2020 disputes: a copy of her Equifax, Experian, and Trans Union December 2019 credit reports (with all of the inaccurate information she was disputing highlighted in bright yellow), Social Security card, and driver's license.

**The Credit Bureaus' Responses to Plaintiff's October 2020 Disputes**

226.    Upon receiving Plaintiff's written dispute in October 2020, Equifax sent ACDVs to the following furnishers regarding the credit accounts Plaintiff disputed:

a) SYNCB/WALMART, Account #603220379435*

b) LVNV FUNDING, LLC, Account #603220379435*

c) TD BANK USA/TARGET CREDIT, Account #585975213988*

d) SUNTRUST BANK DBA LIGHTSTREAM, Account #LS5754*

e) JPMCB CARD SERVICES, Account #426684159585*

227.    Synchrony Bank verified for Equifax that Account #603220379435* belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

228.    LVNV Funding, LLC (collection agency who purchased the account from Synchrony Bank/Walmart), verified for Equifax that Account #603220379435* belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

229.    TD Bank verified for Equifax that Account #585975213988* belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

230.    Truist Bank verified for Equifax that Account #LS5754* belongs to Plaintiff and is accurately reporting on Plaintiff's credit report

231.    JPMorgan Chase Bank verified for Equifax that Account #426684159585* belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

232.    On November 27, 2020, Equifax completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff.

Equifax failed to remove five (5) of the six (6) disputed credit accounts, which do not belong to Plaintiff, and which continued to appear on Plaintiff's Equifax credit report thereafter.

233.   Equifax failed to conduct a reinvestigation of the fourteen (14) hard inquiries disputed by Plaintiff, in violation of 15 U.S.C. § 1681i(a)(1)(A).

234.   Upon receiving Plaintiff's written dispute in October 2020, Trans Union sent ACDVs to the following furnishers regarding the credit accounts Plaintiff disputed:

      a)  BANK OF AMERICA, Account #440066195576****

      b)  TD BANK USA/TARGET CREDI, Account #585975213988****

      c)  JPMCB CARD SERVICES, Account #426684159585****

      d)  SUNTRUST BANK DBA LIGHTSTREAM, Account #LS5754****

      e)  CORTRUST BANK, Account #543668400038****

      f)  LVNV FUNDING, LLC, Account #603220379435****

      g)  SYNCB/WAL-MART, Account #603220379435****

235.   Bank of America instructed Trans Union to delete Account #440066195576**** from Plaintiff's credit file.

236.   TD Bank verified for Trans Union that Account #585975213988**** belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

237.   JPMorgan Chase Bank verified for Trans Union that Account #426684159585**** belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

238.    Truist Bank verified for Trans Union that Account #LS5754**** belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

239.    Cortrust Bank verified for Trans Union that Account #543668400038**** belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

240.    LVNV Funding, LLC (collection agency who purchased the account from Synchrony Bank/Walmart), verified for Trans Union that Account #603220379435* belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

241.    Synchrony Bank verified for Trans Union that Account #603220379435**** belongs to Plaintiff and is accurately reporting on Plaintiff's credit report.

242.    On December 8, 2020, Trans Union completed its reinvestigation of Plaintiff's dispute and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation to Plaintiff. Trans Union failed to remove six (6) of the seven (7) disputed credit accounts, which do not belong to Plaintiff, and which continued to appear on Plaintiff's Trans Union credit report thereafter.

243.    Trans Union failed to conduct a reinvestigation of the seventeen (17) hard/regular inquiries disputed by Plaintiff, in violation of 15 U.S.C. § 1681i(a)(1)(A).

244.    Upon receiving Plaintiff's written dispute in February 2020, Experian sent ACDVs to the following furnishers regarding the credit accounts Plaintiff disputed:

245.    Experian failed to conduct a reinvestigation of Plaintiff's October 27, 2020 dispute, in violation of 15 U.S.C. § 1681i.

246.    The aforementioned data furnishers, CorTrust Bank, JP Morgan Chase Bank, Truist Bank, Synchrony Bank, TD Bank, and LVNV Funding, LLC, all violated 15 U.S.C.

§ 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to them, and failing to communicate to the respective credit bureaus, via ACDV, to modify, delete, or permanently block the reporting of the disputed credit accounts that do not belong to Plaintiff.

247.    As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from her credit; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed in her credit files.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(First Claim For Relief Against Defendants Equifax, Experian, and Trans Union)**

248.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-247 as if fully stated herein.

249.    Defendants Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintain concerning Plaintiff.

250.   As a result of Defendants Equifax, Experian, and Trans Union's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from her credit; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed in her credit file.

251.   Defendants Equifax, Experian, and Trans Union's conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

252.   Plaintiff is entitled to recover attorney's fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim For Relief Against Defendants Equifax, Experian, and Trans Union)**

253.   Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-247 as if fully stated herein.

254.   Defendants Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after it received multiple

notices of such inaccuracies; by failing to conduct a lawful reinvestigation on numerous occasions of both disputed credit accounts and hard inquiries; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit files.

255.   As a result of Defendants Equifax, Experian, and Trans Union's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from her credit; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed in her credit file.

256.   Defendants Equifax, Experian, and Trans Union's conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

257.   Plaintiff is entitled to recover attorney's fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681i(a)(5)(B)(ii)**
**Failure to Give Notice to Consumer of Reinsertion of Previously Deleted Material**
**(Third Claim For Relief Against Defendants Equifax, Experian, and Trans Union)**

258.     Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-247 as if fully stated herein.

259.     Prior to providing Plaintiff's credit file to KIA Motor Finance on April 1, 2019, Equifax reinserted one or more of the previously deleted derogatory collection accounts, belonging to unrelated consumer Jennifer Lynn Martinez, into Plaintiff's credit file and failed to notify Plaintiff of the reinsertion in writing no later than five (5) business days after the reinsertion, in violation of 15 U.S.C. § 1681i(a)(5)(B)(ii).

260.     Prior to providing Plaintiff's credit file to Aqua Finance on May 1, 2019, Trans Union reinserted one or more of the previously deleted derogatory collection accounts, belonging to unrelated consumer Jennifer Lynn Martinez, into Plaintiff's credit file and failed to notify Plaintiff of the reinsertion in writing no later than five (5) business days after the reinsertion, in violation of 15 U.S.C. § 1681i(a)(5)(B)(ii).

261.     After deleting credit account information from Plaintiff's Experian credit file in response to her January 2019 dispute, Experian reinserted one or more of the previously deleted derogatory collection accounts, belonging to unrelated consumer Jennifer Lynn Martinez, into Plaintiff's credit file and failed to notify Plaintiff of the reinsertion in writing no later than five (5) business days after the reinsertion, in violation of 15 U.S.C. § 1681i(a)(5)(B)(ii).

262.     As a result of Defendants Equifax, Experian, and Trans Union's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from her credit; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional

distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed in her credit file.

263.   Defendants Equifax, Experian, and Trans Union's conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

264.   Plaintiff is entitled to recover attorney's fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT IV**
**15 U.S.C. §§ 1681b(a)**
**Furnishing a Credit Report Without a Permissible Purpose**
**(Fourth Claim For Relief Against Defendants Equifax, Experian, and Trans Union)**

265.   Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-247 as if fully stated herein.

266.   This action involves the willful, knowing, and/or negligent violation of the FCRA relating to the dissemination of consumer credit and other financial information.

267.   Plaintiff is a "consumer" as defined by the FCRA.

268.   Defendants Equifax, Experian, and Trans Union are consumer reporting agencies that furnish consumer reports as defined and contemplated by the FCRA.

269.   The FCRA prohibits any consumer reporting agency from furnishing a consumer report unless it has a permissible purpose enumerated under the FCRA, 15 U.S.C. § 1681b(a).

270.   On multiple occasions, Defendants Equifax, Experian, and Trans Union furnished Plaintiff's credit reports to various creditors in response to an application of credit initiated by unrelated consumer Jennifer Lynn Martinez and, thus, without a permissible purpose for furnishing Plaintiff's consumer report, as Plaintiff did not seek credit from the various creditors, and Defendants Equifax, Experian, and Trans Union therefore had no reason to believe that the various creditors intended to use Plaintiff's credit information in connection with a credit transaction involving Plaintiff, which is a violation of the FCRA, 15 U.S.C. § 1681b(a).

271.   As a result of Defendants Equifax, Experian, and Trans Union's conduct, action, and inaction, Plaintiff suffered substantial actual damages, including but not limited to, the loss of her right to keep her private financial information confidential, the loss of her right to information about who was viewing her private financial information and how her private financial information was affecting actions taken on applications of credit filed in another consumer's name; loss of credit itself; loss of the ability to purchase and benefit from her credit; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' hard inquiries mixed in her credit files.

272.    Defendants Equifax, Experian, and Trans Union's conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

273.    Plaintiff is entitled to recover attorney's fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT V**
**15 U.S.C. § 1681s-2(b)**
**Failure to Conduct a Reasonable Investigation of the Disputed Information**
**and Review all Relevant Information Provided by the Consumer**
**(First Claim For Relief Against Defendants Capital One, JPMorgan Chase,**
**Truist Bank, Synchrony Bank, TD Bank, CorTrust Bank, Hy Cite**
**Corporation, Bank of America, Affirm, Inc., and LVNV Funding)**

274.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-247 as if fully stated herein.

275.    Defendants Capital One, JPMorgan Chase, Truist Bank, Synchrony Bank, TD Bank, CorTrust Bank, Hy Cite Corporation, Bank of America, Affirm, Inc., and LVNV Funding published the aforementioned disputed credit accounts to Equifax, Experian, and Trans Union in Plaintiff's name, despite the fact that the disputed credit accounts belong to unrelated consumer Jennifer Lynn Martinez.

276.    Defendants Capital One, JPMorgan Chase, Truist Bank, Synchrony Bank, TD Bank, CorTrust Bank, Hy Cite Corporation, Bank of America, Affirm, Inc., and LVNV Funding violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate

Plaintiff's disputes of the aforementioned credit accounts; by failing to review all relevant information regarding the same; by failing to accurately respond to the various ACDVs sent to them by Defendants Equifax, Experian, and Trans Union; by failing to correctly report results of an accurate investigation to Equifax, Experian, and Trans Union; and by failing to permanently and lawfully correct their own internal records to prevent the re-reporting of the disputed credit accounts to Defendants Equifax, Experian, and Trans Union.

277.   As a result of Defendants Capital One, JPMorgan Chase, Truist Bank, Synchrony Bank, TD Bank, CorTrust Bank, Hy Cite Corporation, Bank of America, Affirm, Inc., and LVNV Funding's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from her credit; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

278.   Defendants Capital One, JPMorgan Chase, Truist Bank, Synchrony Bank, TD Bank, CorTrust Bank, Hy Cite Corporation, Bank of America, Affirm, Inc., and LVNV Funding's conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

279.   Plaintiff is entitled to recover attorney's fees and costs from Defendants Capital One, JPMorgan Chase, Truist Bank, Synchrony Bank, TD Bank, CorTrust Bank,

Hy Cite Corporation, Bank of America, Affirm, Inc., and LVNV Funding in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a) Determining that each Defendant negligently and/or willfully violated the FCRA;

b) Awarding Plaintiff actual damages, statutory, and punitive damages as provided by the FCRA;

c) Awarding Plaintiff reasonable attorneys' fees and costs from each Defendant as provided by the FCRA; and

d) Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

280.  Plaintiff demands a trial by jury.

Dated: February 9, 2021                     HUMPHREYS WALLACE HUMPHREYS PC

                                    By:   /s/ Lucius James Wallace

                                    Lucius James Wallace, OBA# 16070
                                    Robert David Humphreys, OBA#12346
                                    Paul Catalano, OBA #22097
                                    9202 South Toledo Ave.
                                    Tulsa, OK 74137
                                    Telephone: (918) 747-5300, ext. 3
                                    Fax: 918-471-2223
                                    luke@hwh-law.com
                                    david@hwh-law.com

paul@hwh-law.com

Hans W. Lodge, MN Bar No. 0397012*
(*Pro Hac Vice* Pending)
BERGER MONTAGUE PC
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Telephone: (612) 607-7794
Fax: (612) 584-4470
hlodge@bm.net

***ATTORNEYS FOR PLAINTIFF***